# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| IRE GENE GROVNER, JR., | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CIVIL ACTION NO.: CV213-089 |
| | * | |
| GEORGIA DEPARTMENT OF | * | |
| NATURAL RESOURCES, and | * | |
| FRED HAY, JR., in his individual capacity, | * | |
| | * | |
| Defendants. | * | |

## ORDER

Presently before the Court is the Motion for Summary Judgment filed by Defendants Georgia Department of Natural Resources ("DNR") and Fred Hay, Jr. Dkt. No. 28. Through their Motion, Defendants seek summary judgment on all claims asserted against them in this employment discrimination action. Plaintiff has filed a Response in opposition to the Motion, and Defendants have filed a reply. Dkt. Nos. 30 & 32. For the reasons which follow, Defendants' Motion is **GRANTED**.

## FACTUAL BACKGROUND[1]

Defendant DNR and the University System of Georgia own and operate most of the land on Sapelo Island, a barrier island off

---

[1] The facts are viewed in the light most favorable to the non-moving party (in this case, Plaintiff), as they must be upon any motion for summary judgment.

the Georgia coast.  Dkt. No. 23-2, p. 1.  Sapelo Island largely

is accessed by a ferry system, which consists of the *Katie*

*Underwood* and the *Annemarie*. Defendant DNR owns, operates, and

maintains these ferry boats.  Id. at p. 2.  Defendant DNR

employs a senior captain, two captains, and three mates to

operate these ferries which make three round trips a day between

the Sapelo Island Visitors' Center in Meridian, Georgia, and

Sapelo Island, with additional runs for special occasions and

emergencies.  Id. at pp. 2-3.  The senior captain is the direct

supervisor for the captains and the mates, and the senior

captain's supervisor is Defendant Hay.  Dkt. No. 1, p. 4.

Defendant Hay became the Sapelo Island manager in

April 2004.  In his capacity as Island manager, Defendant Hay

usually reviews the applications for any position which is

available in the ferry system.  See Dkt. No. 28-2, p. 11.  Any

job announcements are made under DNR Standard Operating

Procedure ("SOP") Number 004-A.  This SOP allows the Division

Personnel Representatives and/or managers to "make preliminary

minimum qualification review decision[s] for all DNR jobs."  Id.

DNR personnel are to review applications, resumes, and/or

work histories to determine whether the applicant meets the

minimum job requirements for the job announcement.  Id.

Personnel can also screen applicants using the preferred

qualifications listed on the vacancy announcement.  Personnel

are to verify the accuracy of any information the applicant provides. Id. All selection criteria and interview questions "must be established prior to the scheduling of interviews or screening of [an] applicant's qualifications[ ]" and are to be applied equally to all candidates. Id. at pp. 11-12. Any interview questions must be based on selection criteria applicable to the position, and interviews are to be conducted by people with knowledge of the job requirements for the position. At least one of the interviewers is to have managerial or supervisory responsibility for the vacancy or similar position. Id. at p. 12. Each interviewer completes a confidential interview/evaluation form for each applicant by rating each applicant's answer to the interview questions with a numerical score.

Once these forms are completed and the scores are tabulated, the chairperson of the selection board completes the selection summary sheet and lists each applicant in descending order according to the total score received and sends the recommendation packets to DNR's office in Atlanta. Id. The recommendation must be approved by the appointing authority for the DNR before the applicant is given the job. Id.

DNR advertised for an open captain position in the Sapelo Island ferry system in 2012, and Plaintiff applied. Dkt. No. 1, p. 4. Plaintiff was working as a boat captain for Manson

Construction at the time he applied, and he was also running his tour guide business, Sapelo Sights. Id. at pp. 3-4. Plaintiff met the minimum qualifications for the captain position, as did applicants Mark Thompson and Tripp Durant. Id. at p. 4. These three (3) men were interviewed for the captain position. The interview panel consisted of Defendant Hay, Mike Lewis, who is the senior captain, and David Mixon, the Wildlife Resources Division Coastal Region Manager and Defendant Hay's boss. Dkt. No. 28-2, p. 15. After the interview process was completed, the recommendation was sent through DNR's chain of command. Mr. Thompson, who is white, was selected to fill the captain position over Plaintiff, who is black, and Durant, who is also white. Id. and at p. 19.

Subsequent to the captain hiring process, DNR announced a vacancy for the mate position, and Plaintiff applied for that opening. Plaintiff, Mr. Durant, and six (6) other men met the minimum qualifications for the mate position and were interviewed. The interview panel consisted of Defendant Hay, Mr. Lewis, and Willis Joel Hillery, a current ferry captain. Id. at p. 21. Once the interview process was completed, and the recommendation was sent through the DNR's chain of command, Mr. Durant was selected for the mate position.

Plaintiff claims he was better qualified than the men chosen for the captain and mate positions, both of whom are

white, and that Defendants discriminated against him based on his race by hiring these men. Dkt. No. 1, pp. 6-7. Plaintiff filed claims for racial discrimination with the Equal Employment Opportunity Commission ("EEOC") after each instance of Defendant DNR hiring another person to fill each respective position. Id. Plaintiff seeks relief against Defendant DNR based on Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., and against Defendant Hay pursuant to 42 U.S.C. §§ 1981 and 1983. Id. at pp. 8-9.

Defendants contend that Defendant DNR had legitimate, non-discriminatory reasons for not hiring Plaintiff and that, therefore, Plaintiff fails to establish a Title VII race discrimination claim. Dkt. No. 28-1, pp.4-23. Defendants also argue that Defendant Hay is protected from suit by qualified immunity. Id. at pp. 23-24.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy

Indus. Grp., Inc., 764 F. Supp.2d 1297, 1301 (M.D. Fla. 2011)

(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986),

and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045

(11th Cir. 1989)).

The moving party bears the burden of establishing that
there is no genuine dispute as to any material fact and that it
is entitled to judgment as a matter of law.  See Williamson Oil
Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir.
2003).  Specifically, the moving party must identify the
portions of the record which establish that there are no
"genuine dispute[s] as to any material fact and the movant is
entitled to judgment as a matter of law."  Moton v. Cowart, 631
F.3d 1337, 1341 (11th Cir. 2011).  When the nonmoving party
would have the burden of proof at trial, the moving party may
discharge its burden by showing that the record lacks evidence
to support the nonmoving party's case or that the nonmoving
party would be unable to prove his case at trial.  See id.
(citing Celotex v. Catrett, 477 U.S. 317, 322-23 (1986)).  In
determining whether a summary judgment motion should be granted,
a court must view the record and all reasonable inferences that
can be drawn from the record in a light most favorable to the
nonmoving party.  Peek-A-Boo Lounge of Bradenton, Inc. v.
Manatee Cnty., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

**DISCUSSION**

The instant Motion requires the Court to apply the above-explained summary judgement standard to each claim within Plaintiff's Complaint.

**I.  Discrimination under Title VII (Plaintiff's Claim Against Defendant DNR)**

Title VII makes it unlawful for an employer to "fail or refuse to hire . . . or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race[.]" 42 U.S.C. § 2000e-2(a)(1).

A plaintiff's claim of racial discrimination may be established by statistical or anecdotal proof, direct evidence, or circumstantial evidence. Coar v. Pemco Aeroplex, Inc., 372 F. App'x 1, 2 (11th Cir. 2010); Van Voorhis v. Hillsborough Cnty. Bd. of Cnty. Comm'rs, 512 F.3d 1296, 1300 (11th Cir. 2008). In the case at hand, Plaintiff attempts to prove discrimination via circumstantial evidence.

**A. The McDonnell Douglas Framework**

The "sufficiency" of disparate treatment claims based on circumstantial evidence is tested "by applying the burden-shifting framework" established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). Brooks v. Cnty. Comm'n

of Jefferson Cnty., Ala., 446 F.3d 1160, 1162 (11th Cir. 2006) (citing Chapman v. AI Transp., 229 F.3d 1012, 1024 (11th Cir. 2000)). Under the McDonnell Douglas burden-shifting framework, "a plaintiff first must show an inference of discriminatory intent, and thus carries the initial burden of establishing a *prima facie* case of discrimination[,]" or disparate treatment. Brooks, 446 F.3d at 1162 (italics omitted); see also, Kelliher v. Veneman, 313 F.3d 1270, 1275 (11th Cir. 2002). To establish a *prima facie* case for disparate treatment in a race discrimination case, "the plaintiff must show that: (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) her employer treated similarly situated employees outside of her protected class more favorably than she was treated; and (4) she was qualified to do the job." Burke-Fowler v. Orange Cnty., Fla., 447 F.3d 1319, 1323 (11th Cir. 2006); Apodaca v. Sec'y of Dep't of Homeland Sec., 161 F. App'x 897, 900 (11th Cir. 2006)

In this case, Defendants concede "there is no dispute that Plaintiff has established a *prima facie* case of discrimination." Dkt. No. 28-1, 5. However, Defendants maintain the decisions not to hire Plaintiff for the captain and mate positions were based on legitimate, nondiscriminatory reasons which are not pretexts. Id. Given Defendants' concession, the Court need not

make any in depth analysis of whether Plaintiff establishes a *prima facie* case of discrimination.

A showing of a *prima facie* case of discrimination only creates "a rebuttable presumption that the employer unlawfully discriminated against [a plaintiff]." EEOC v. Joe's Stone Crabs, Inc., 296 F.3d 1265, 1272 (11th Cir. 2002). "[T]he burden then shifts to the employer to produce evidence that its action was taken for a legitimate, non-discriminatory reason." Brooks, 446 F.3d at 1162. If the employer produces such evidence, a court's "inquiry 'proceeds to a new level of specificity,' in which the plaintiff must show that the proffered reason really is a pretext for unlawful discrimination." Id. (quoting Joe's Stone, 296 F.3d at 1272-73). "Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff." Id.

Defendants claim the hiring decisions for both the captain and mate positions were made in accordance with SOP Number 004-A. Dkt. No. 28-1, p. 6. According to Defendants, Plaintiff was not selected for either of these positions because he did not have the highest total score after the interview processes were completed. Id. and at p. 10. This reason is a "legitimate, non-discriminatory reason" for the decision not to hire

Plaintiff for the captain and mate positions. Brooks, 446 F.3d at 1162. Thus, Plaintiff must rebut this reason by showing the proffered reason was a pretext for discrimination.[2]

To create a genuine dispute of material fact as to pretext and thereby avoid summary judgment, Plaintiff "must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993) (citation omitted). A reason is not pretext for discrimination "unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (emphases in original), *overruled in part on other grounds by* Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 169–70 (2009).

## B. The Parties' Arguments as to Pretext

Plaintiff contends there is "ample evidence" to support a conclusion that Defendants' proffered reasons to not hire Plaintiff were merely pretextual. Plaintiff asserts Defendant Hay departed from DNR's hiring process prior to receiving applications to ensure his preferred choices for the captain and mate positions would be hired. Dkt. No. 30, pp. 8, 13.

---

[2] Plaintiff acknowledges that he carries this burden. Dkt. No. 30, p. 15. ("With the Defendants having articulated some explanation for not hiring [Plaintiff] the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are pretextual.") (citations and internal quotations omitted)

Specifically, Plaintiff points to Defendant Hay's testimony that he had positive opinions of both Mr. Thompson and Mr. Durant prior to the application processes for the captain and mate positions but had some negative experiences with Plaintiff which informed his hiring decisions. Id. at pp. 8, 11, 13. While Defendants cite specific instances that caused Hay to question Plaintiff's personality and attitude, Plaintiff characterizes these instances as "*post hoc* rationalizations, several of which are demonstrably unrelated to the question of [Plaintiff's] qualifications[.]" Id. at p. 15. Plaintiff also contends that Defendant Hay manipulated the hiring process and deviated from established DNR practices and procedures "in a discriminatory manner." Id. Additionally, Plaintiff states Hay admitted he had a personal bias against him, which is "a fact that supports a finding of discrimination." Id. Plaintiff further contends that a jury could find pretext in the "suggestion" that Mr. Thompson and Mr. Durant were better suited for the positions because "the majority of witnesses" agree that Plaintiff "was equally or more qualified[ ]" than Mr. Thompson and Mr. Durant for the positions. Id.

In arguing against pretext, Defendants point to the DNR's hiring process, the qualifications of the candidates that were hired, and the concerns that Defendant Hay had with Plaintiff. Hay testified he and Mr. Lewis, who is black, were always on the

hiring committees for the hiring for ferry positions and, in the case of hiring a mate, they would have another captain on the committee. Dkt. No. 28-68, p. 18. Defendant Hay also testified that he brings everything he knows about an applicant, whether negative or positive, into the interview process. Id. at p. 25. James Laine, the Human Resources Director for DNR, and Mike Long, the Deputy Director of Human Resources for DNR, echoed this sentiment during their depositions. Dkt. No. 28-70, p. 16 ("you cannot divorce yourself from what you know about people outside of the interview process; there is a difference between personal and business reasons to dislike an applicant"); Dkt. No. 28-72, p. 9 ("whatever information the interviewer has that is relevant to the job can be used to base a decision").

Defendant Hay stated that prior to the application and hiring processes, he had some "disagreements" with Plaintiff about the implementation of certain DNR policies on Sapelo Island and other instances that caused him to question whether Plaintiff's personality would be a good fit for the jobs. Id. at p. 23. As an example, Defendant Hay recalled an instance when Plaintiff wanted to tie his personal boat to the Long Tabby dock, which is a state-owned dock. Id. at p. 23. Additionally, Defendant Hay pointed to Plaintiff having his tour boat at the dock at the same time the DNR ferries were there, even though Defendant Hay had asked Plaintiff not to do so because of the

potential for a dangerous situation. Id. at p. 24. As another example of a negative experience with Plaintiff, Defendant Hay described a time when a car was stuck in the marsh. Plaintiff used his backhoe to pull the car out of the marsh and left a large hole in the marsh, which Plaintiff partially filled with "wood and stuff like that." Id. at p. 26. Defendant Hay testified a person cannot create such a hole within a protected wetland, that he asked Plaintiff to properly grade the hole, and "to this day that hole hasn't been touched by [Plaintiff]." Id. Defendant Hay declared "that weighs in when you go to hire someone[ ]" and wondered how he could hire someone he feels does not respect him. Id.

### C. Analysis of Pretext as to the Captain Position

Defendant Hay testified specifically as to what attributes and experiences he found to be important as to the captain position. Defendant Hay noted that, prior to being hired as a captain, Mr. Thompson was already working for the DNR as a mate, and the DNR allows the hiring of people from within the DNR for a captain's position. Id. at p. 48. Defendant Hay declared that he was not allowed to simply promote Mr. Thompson, and, thus, he added the preference for a Wildlife Resources Division employee to the preferred qualifications for the position, based on his knowledge of Mr. Thompson. Id. at pp. 45, 64. Defendant Hay stated the interview of Mr. Thompson did not inform his

opinion of Mr. Thompson for the captain position, as he had
known him for many years and thought he had "people skills[.]"
Id. at p. 47.

As to Plaintiff, in addition to the instances noted above,
Defendant Hay testified that he felt Plaintiff had overstated
his experiences as a tour guide and as a shrimp boat captain on
the *Lady Vanessa*, which he took as Plaintiff's attempt to appear
to have more captaining experience than he actually did. Id. at
pp. 42, 47‑48. Even considering Plaintiff's captaining
experience, Defendant Hay noted Plaintiff's time on a shrimp
boat was not the same as having worked on a passenger vessel, as
Mr. Thompson had done, which was a preferred qualification for
the captain position. Id. at p. 51.

Defendant Hay, Mr. Lewis, and Mr. Mixon comprised the
interview panel for the captain position. Dkt. No. 28‑73,
p. 15. Defendant Hay's evaluation forms showed a score of 20
for Plaintiff and 31 for Mr. Thompson.[3] Dkt. Nos. 28‑26, 28‑27.

---

[3] Plaintiff avers there were "two anomalies" in the scoring for the captain
position, both of which benefitted Mr. Thompson. Dkt. No. 30, p. 21 n.4.
First, Plaintiff notes Defendant Hay "altered" Mr. Lewis' evaluation sheet
for Mr. Durant and then Defendant Hay "unjustifiably awarded" five additional
points to Mr. Thompson, giving him a score of 31 out of a total 30 points.
Id. While Defendant Hay agreed Mr. Thompson should have received only 26
points, he also agreed to having had made a mathematical error. Dkt. No. 28‑
68, p. 50. The Court notes Mr. Lewis' testimony that Defendant Hay "probably
could have[ ]" altered his score sheet for Mr. Durant by marking through the
final score listed of 27 and wrote a 22 and initialed it. Dkt. No. 28‑71,
p. 32. Accepting these averments as true, however, has no bearing on the
interview panel's final scoring for the captain position. Mr. Lewis' score
sheet for Mr. Durant contained an addition error, as he scored Mr. Durant

AO 72A
(Rev. 8/82)

Mr. Lewis scored Plaintiff with a 13 and Mr. Thompson an 18, and Mr. Mixon's scores were a 19 for Plaintiff and a 26 for Mr. Thompson. Dkt. Nos. 28-8, 28-7, 28-45, 28-46. The process resulted in overall scored of 75 for Mr. Thompson, 59 for Mr. Durant, and 52 for Plaintiff. Dkt. No. 28-9.

As part of his effort to establish pretext, Plaintiff testified that Mr. Lewis told him he did not understand why Plaintiff was not chosen for the captain position, and Mr. Lewis testified during his deposition that he told Plaintiff he thought Plaintiff should have gotten the captain's position over Mr. Thompson. Dkt. No. 28-74, p. 14; Dkt. No. 28-71, p. 32.[4] However, Mr. Lewis scored Plaintiff five points lower than Mr. Thompson during the interview process. When asked why Plaintiff did not get the captain position, Mr. Lewis said, "I guess because his scores weren't enough. I gave him a low score. I guess that's on me." Dkt. No. 28-71, p. 34.

---

with three 5s, a 4, and a 3, for a total corrected score of 22 versus 27. Dkt. No. 28-47. The selection summary sheet for the captain position shows a total score of 75 for Mr. Thompson (which should have been 70 absent the mathematical error), a 59 for Mr. Durant, and a 52 for Plaintiff. Dkt. No. 28-9. Mr. Thompson would have still been the highest scoring applicant for the captain position even with a corrected score.

[4] Plaintiff also points to Lewis' testimony that prior to the hiring, Mr. Thompson received a month of on the job training for the captain's position from Mr. Lewis at Defendant Hay's direction, whereas Mr. Lewis and all other captains only received a week's training. Id. and at p. 33. This evidence at most shows that Hay identified Thompson, then employed as mate, as a strong candidate to be a captain before the hiring process, something that Defendant Hay readily admits. Plaintiff has failed to explain how these actions taken even before Plaintiff, a non-employee, had applied for the position somehow show that Defendants discriminated against Plaintiff based on his race.

Given that each of the members of the interview panel scored Mr. Thompson higher than Plaintiff, Plaintiff has failed to show that the panel's scores were merely a pretext for some discriminatory animus. Moreover, given the qualifications that Mr. Thompson possessed, including his experience working as a mate on the ferry, Plaintiff has failed to show that any discrepancy between Plaintiff's qualifications and Mr. Thompson's "were so severe that no reasonable person could have chosen [Mr. Thompson] over him." Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006). In reaching this conclusion, the Court stresses that it is not the Court's place to second guess DNR's hiring choices as "Title VII is not designed to make federal courts sit as a super-personnel department that reexamines an entity's business decisions." Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1244 (11th Cir. 2001). Rather, the Court is tasked with assessing whether there is a genuine dispute of material fact as to whether the decision to hire Mr. Thompson rather than Plaintiff was motivated by race. Having found no such dispute, Plaintiff's Title VII claims based on Defendant DNR's filling of the captain's position cannot survive summary judgment.

**D. Analysis of Pretext as to the Mate Position**

As for the mate position, Defendant Hay and Mr. Lewis were on the selection panel along with Mr. Hillery. See Dkt.

No. 28-69, p. 13. The combined score of the selection panel slightly favored Mr. Durant over Plaintiff. Mr. Hillery noted it was fair to say he viewed Plaintiff and Mr. Durant as being equally qualified for the mate position, and he gave them the same scores. Id. at p. 14; Dkt. Nos. 28-36, 28-37.

Mr. Lewis found Mr. Durant and Plaintiff to be "neck and neck" and gave Plaintiff a higher score than Mr. Durant. Dkt. No. 28-71, p. 25-26. Mr. Lewis testified he felt Plaintiff's local knowledge of the water around Sapelo Island was superior to that of Mr. Durant because Plaintiff was born and raised on the island. Id. Mr. Lewis also testified he does not think it was fair that Plaintiff did not get the mate position because Plaintiff had been trying for so long to get a position with DNR. Id. at p. 27. On the date of the interview, Mr. Lewis told Defendant Hay that he had given Plaintiff a perfect score and that he wanted to give Plaintiff the mate position.[5] Id.

Defendant Hay gave Mr. Durant a score of 19 and Plaintiff a score of 16. Dkt. 28-21, 28-22. Hay scored Plaintiff and Durant equally in the categories of Education/Experience and

---

[5] Plaintiff points out that, according to Mr. Lewis, during this conversation, Defendant Hay informed Mr. Lewis that they would see what Hay's score would be, as Hay had not yet finished his score sheet. Id. at pp. 26-27. Plaintiff contends that this evidences that Defendant Hay was intending to improperly sway the hiring process after the interview. However, it appears that this all occurred on the date of the interview when the panel members were totaling their scores, and that Mr. Lewis approached Defendant Hay. Id.

Teamwork, and scored Mr. Durant higher in the areas of People Skills and Attitude.  Id.

Defendant Hay stated he feels that a person's "personality is the key element for hiring." Dkt. 28-68, p. 25.  Defendant Hay testified that the person has to "be a good fit" for the crew and has to "be someone who can handle the discipline and structure of DNR, interact with authority. . . . You're not looking for. . . a well-developed skill set at that point."  Id. Defendant Hay declared Mr. Durant had gained skills in "on-the-site dynamic diplomacy" when working for the telephone company, because he had to go into people's homes and shut off their telephones.  Id. at p. 30.  Defendant Hay found this ability to be important because he said an employee does not know who will be coming onto a ferry on any given day and whether the person was having a bad day, and Mr. Durant showed him "he had built in this ability to adapt with real diplomacy. . . .  [W]hen you're hiring a second mate you're hiring someone that you can train, that will respond well to the structure of the system, and most importantly you're hiring those personality characteristics where they're going to be able to handle what the ferry and the ferry visitors send their way."  Id.  Hay also testified that Mr. Durant had other valuable qualifications and experience including experience working with fiberglass and boating

experience including working as a Sea Tow captain.  Id. at
p. 30, 37.

Mr. Laine testified about the importance of people skills
for the mate position because the mate "greet[s] our
customers[.]"  Dkt. No. 28-70, p. 14.  Mr. Hillery found Mr.
Durant to be an "[o]utstanding" mate because he was a "good
people person" and "energetic", and he displayed a "willingness
to do the job."  Dkt. No. 28-69, p. 10.  Mr. Lewis testified a
good mate is someone with a "good attitude[ ]" who is "able to
talk to people."  Dkt. No. 28-71, p. 18.

In contrast, Defendant Hay testified that he found one of
Plaintiff's biggest challenges to be teamwork, as he displayed
"considerable resistance, attitude" when he had been asked to
participate "as part of the larger Sapelo team[.]"  Id. at
p. 38.  Defendant Hay noted that, even though Plaintiff
conducted a lot of tours of Sapelo Island, he did not actively
engage with the tour guide clients, as he saw Plaintiff talking
on his cell phone fairly often.  Id. at p. 38.  Mr. Hillery
observed the "stressed working relationship" between Plaintiff
and Defendant Hay and stated Plaintiff "keeps throwing stuff up
in the way."  Dkt. No. 28-69, p. 16.  For example, Mr. Hillery
testified that on four or five occasions when Defendant Hay had
asked Plaintiff not to park where signs prohibit parking,
Plaintiff responded dismissively and walked off.  Id. at 15.

On the issue of his qualifications, Plaintiff offers the opinion of Ken Wahl, a marine safety consultant and captain. Mr. Wahl opined that Plaintiff was more qualified for the captain position than Mr. Thompson and more qualified for the mate position than Mr. Durant. Dkt. No. 28-23. However, Mr. Wahl only reviewed documents relating to the applicants for these positions and did not have the benefit of interviewing Plaintiff, Mr. Thompson, and Mr. Durant. Id. at pp. 1-2. Mr. Wahl's observations overlook the interviewers' knowledge of and previous experiences with the applicants. Furthermore, the relevant inquiry is not whether Plaintiff was more qualified than Mr. Thompson and Mr. Durant. Rather, Plaintiff must show that he is "so clearly more qualified for the position than [Mr. Thompson and Mr. Durant] that a reasonable juror could infer discriminatory intent from the comparison." Lee v. GTE Fla., Inc., 226 F.3d 1249, 1255 (11th Cir. 2000). Mr. Wahl's opinion does not support such a conclusion.

Plaintiff has failed to show that the discrepancies between his qualifications and Mr. Durant's qualifications for the mate position "were so severe that no reasonable person could have chosen [Durant] over him." Brooks, 446 F.3d at 1163. Even Mr. Lewis, who wanted Plaintiff to be hired, found Mr. Durant and Plaintiff to be "neck and neck." Dkt. No. 28-71, p. 25-26. Likewise, Mr. Hillery found the two to be equally qualified.

Again, as with the captain position, the Court stresses that it is not its place to determine whether Plaintiff or Mr. Durant was the most qualified candidate for the mate position or whether hiring Mr. Durant was prudent. Rather, the Court's inquiry must be limited to whether there is sufficient evidence of discrimination. Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir.1997) (stressing that "federal courts do not sit to second-guess the business judgment of employers"); Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir.1999)(emphasizing that courts "are not in the business of adjudging whether employment decisions are prudent or fair. Instead our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.")

Viewing the evidence in the light most favorable to Plaintiff, the most that he has shown is that his past experiences with Defendant Hay influenced the mate hiring process. Defendant Hay, Mr. Laine, and Mr. Long all testified that interviewers look at the person as a whole when interviewing him. Dkt. No. 28-68, p. 25; Dkt. No. 28-70, p. 16; and Dkt. No. 28-72, p. 9. Defendant Hay's previous experiences with each candidate—good or bad— undoubtedly helped shape his opinions and recommendations for hiring purposes. This is not only lawful, it is understandable. Particularly given the importance that several witnesses placed on personality skills

as to the mate position, an interviewer would understandably take into consideration the past interactions he had with a candidate and those that he observed the candidate having with others when assessing the candidate's qualifications.

Furthermore, even if Plaintiff had shown that Defendants based the hiring decision on Hays' emotions rather than Plaintiff's qualifications, Plaintiff has not shown that those emotions were racially discriminatory. See St. Mary's, 509 U.S. at 523-24 ("Title VII does not award damages against employers who cannot prove a nondiscriminatory reason for adverse employment action, but only against employers who are proven to have taken adverse employment action by reason of (in the context of the present case) race.").

During his deposition, when asked what he thinks Defendant Hay has against him, Plaintiff responded, "I think he was—you know, racist." Dkt. No. 28-74, p. 20. However, Plaintiff has not offered any competent reason for why he thinks Defendant Hay is a racist.

Plaintiff attempts to make this showing by recounting claims of race discrimination made years ago by Mr. Lewis. Mr. Lewis testified to having filed racial discrimination charges against the DNR with the EEOC before he started working for the DNR in 1998. Dkt. No. 28-71, p. 8. Mr. Lewis stated the charges were resolved with him getting a job as a second mate on

the ferries.  Id.  However, this occurred before Defendant Hay

was the Island Manager.  Id.  Further, Mr. Lewis deposed that

there have been no "other times during [his] employment with DNR

that [he] felt discriminated against on the basis of race[.]"

Id. at p. 18.[6]  Plaintiff has failed to make any connection

between any alleged discrimination against Mr. Lewis and Mr.

Hay's recommendation as to Plaintiff.  Indeed, when asked what

he thought Defendant Hay had against Plaintiff, Mr. Lewis

stated, "They don't get along."  Id. at p. 34.

Plaintiff fails to point to any evidence which could lead a

jury to conclude that Defendant DNR did not hire him because of

his race.  At best, Plaintiff presents the Court with a

conclusory statement that he feels that Defendant Hay is a

racist.  The Court notes Mr. Lewis' testimony that he thinks

Defendant Hay and Plaintiff do not like each other.  Perhaps the

evidence supports that sentiment, but the record belies any

assertion that the two men do not like each other based on

---

[6] Mr. Lewis also stated that he was denied the senior captain position on two
occasions.  When asked why that was, Mr. Lewis replied someone with more
experience than he had was given the job, and the second time Defendant Hay
told him he lacked leadership, even though Mr. Lewis trained the person who
was selected.  Id. at p. 9.  Mr. Lewis also testified to Defendant Hay second
guessing his decisions about how to run the boat or how to discipline the
crew before he became senior captain.  Id. at pp. 9-10.  However, Mr. Lewis
noted that Defendant Hay would tell him (Mr. Lewis) later he was correct in
how he wanted to handle certain disciplinary situations or if Mr. Lewis had
told Defendant Hay he needed to back off and give him a little more
authority.  Id. at pp. 10-11.  While it appears that Mr. Lewis disagreed with
Defendant Hay at times, no evidence suggests that Mr. Lewis feels these
disagreements were the result of any discriminatory animus.  Id. at p. 18.

racial animus. Plaintiff fails to overcome his burden of establishing a genuine dispute as to any fact material to the ultimate conclusion in this case—whether Defendants' proffered reason for not hiring Plaintiff was a pretext and the real reason Plaintiff was not hired is his race. Consequently, Defendant DNR is entitled to summary judgment on Plaintiff's Title VII claims.

## II. Qualified Immunity (Plaintiff's §§ 1981 and 1983 Claims Against Defendant Hay only)

In addition to bringing claims against Defendant DNR, Plaintiff has also sued Defendant Hay individually under 42 U.S.C. §§ 1981 & 1983. Under Section 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). "The rights protected by [Section 1981] are protected against impairment by nongovernmental discrimination[.]" 42 U.S.C. § 1981(c). Claims of race discrimination under Section 1981 are analyzed in the same manner as claims brought under Title VII. Coar, 372 F. App'x at 2 (citing Rice-Lamar v. City of Fort Lauderdale, Fla., 232 F.3d 836, 843 n.11 (11th Cir. 2000)). "Title VII and [S]ection 1983 claims have the same

elements where the claims are based on the same set of facts."
Rioux v. City of Atlanta, 520 F.3d 1269, 1275 n.5. (11th Cir.
2008).

Plaintiff's claims against Defendant Hay are based on the
same set of facts as his Title VII claims against DNR.   As with
their defense of DNR, Defendants argue that Defendant Hay's
hiring decisions were based on legitimate, business-related
reasons.   Defendants contend the Court need not go any further
than this part of the inquiry because there is no evidence of a
constitutional violation. In the alternative, Defendant Hay
contends he is entitled to qualified immunity because Plaintiff
cannot show a reasonable person in Defendant Hay's position
would have known his actions violated clearly established law.
Dkt. No. 28-1, p. 24.

Plaintiff maintains qualified immunity is inapplicable
because he "plainly alleged a violation of his clearly
established constitutional rights."   Dkt. No. 30, p. 25.
Plaintiff maintains that this Court cannot find qualified
immunity shields Defendant Hay from liability when "[t]aking the
facts alleged as true."   Id.

Qualified immunity protects a government official
performing discretionary functions from suit in his individual
capacity, so long as his conduct does not violate "clearly
established statutory or constitutional rights of which a

reasonable person would have known." Gonzalez v. Reno, 325 F.3d 1228, 1232 (11th Cir. 2003) (quoting Hope v. Pelzer, 536 U.S. 730, 739 (2002)). A government official must first prove that he was acting within his discretionary authority. Id. at 1233; Ray v. Foltz, 370 F.3d 1079, 1081-82 (11th Cir. 2004). A government official acts within his discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority. Gray ex rel. Alexander v. Bostic, 458 F.3d 1295, 1303 (11th Cir. 2006). Once the government official has shown he was acting within his discretionary authority, the burden shifts to the Plaintiff to show that the Defendant is not entitled to qualified immunity. To overcome qualified immunity, a plaintiff must satisfy a two prong test; he must show that: (1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation. Saucier v. Katz, 533 U.S. 194, 201 (2001); Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1264 (11th Cir. 2004).[7]

As determined in Section I of this Order, even when viewing the evidence in the light most favorable to Plaintiff, no rational juror could conclude that he was not hired for the

---

[7] In Pearson v. Callahan, 555 U.S. 223, 236 (2009), the Supreme Court held that courts can exercise discretion in deciding which of the two Saucier prongs should be addressed first in light of the particular case at hand.

captain and mate positions due to racial discrimination. Therefore, Plaintiff likewise fails to meet his burden of establishing competent evidence that Defendant Hay committed a constitutional violation, much less a violation of clearly established law. For these reasons, Defendant Hay is entitled to summary judgment based on qualified immunity principles.

## CONCLUSION

Based on the foregoing, Defendants' Motion for Summary Judgment is **GRANTED**. The Clerk of Court is directed to enter **FINAL JUDGMENT** in favor of Defendants and to **CLOSE** this case.

**SO ORDERED**, this 31 day of March _____, 2015.

_____
LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA